United States District Court
Southern District of Texas
**ENTERED**
November 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Kirsten Tubbs, | § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:21-cv-02908 |
| v. | § | |
| Hach Company, | § | |
| *Defendant.* | § | |

**MEMORANDUM AND RECOMMENDATION**

This case concerns an accident involving a lab technician and the use of some highly reactive chemicals. Plaintiff Kirsten Tubbs was performing a chemical sampling procedure when she inhaled toxic fumes, causing her injury. *See generally*, Dkt. 1-2. Ms. Tubbs sued Defendant Hach Company ("Hach"), the manufacturer of the sampling equipment, alleging multiple products-liability theories. *See* Dkt. 1-2 at 5. Hach moved for summary judgment. *See* Dkt. 10. After carefully reviewing the motion, response, the record, and the applicable law, it is recommended that Hach's motion for summary judgment be granted.

**Background and Procedural History**

Ms. Tubbs worked as a lab technician for Westway Feed Products, LLC ("Westway"), a company that produces liquid supplements for livestock. Dkt. 10-3 at 23-24.[1] As part of its operations, Westway tests the digestibility of different forms of animal feed in a simulated animal stomach. *See id.* at 59; Dkt. 10-5 at 12-13. Westway uses one of Hach's products, the "Digestahl Digestion Apparatus" ("the Device"), to perform this testing. Dkt. 10-3 at 46.

The procedures for using the Device vary with sample type. Dkt. 10-1 at HACH 0049. Normally, when breaking down oils, aqueous liquids, or other general samples, the Westway techs combine sulfuric acid with hydrogen peroxide and then apply heat to stimulate the chemical reaction. *See id.* at HACH 0057-61 (general samples), HACH 0067-78 (aqueous liquids), HACH 0081-92 (oils). But when testing the digestive breakdown of solid metals and other materials, the procedure calls for a different set of chemicals, mostly deionized water and a strong basic compound—sodium hydroxide. *See id.* at HACH 0097-98.

The Device's operating manual includes pages of warnings. *See id.* at HACH 0039-48. Those warnings instruct users to refrain from using chemicals improperly or performing any step out of order. *See id.* at HACH 0039 ("Acid

---

[1] Citations to pages of various depositions refer to the page numbers of the deposition transcript, rather than the e-filing header.

type -- Only use acid specified in Hach step-by-step procedures"), 0042 ("Sulfuric acid is a strong oxidizer. It may ignite or explode on contact with many different chemicals."). The manual also cautions, "[d]o not use damaged glassware or apparatus. Discard all damage equipment and replace it." *Id.* at HACH 0040. And the manual warns: "[a]lways follow Hach published procedures when using the [Device]." *Id.* at HACH 0124.

Ms. Tubbs regularly used the Device while working for Westway and was familiar with the relevant procedures. Dkt. 10-3 at 43, 70-71. Westway had six of these Devices housed in a room, along with other equipment. *Id.* at 44, 46-48. All the Devices were connected in the back, via a tube or hose, to a vacuum ventilation system (a "scrubber") that removes heat and vapor and vents the air out of the building. Dkt. 10-3 at 64-66; Dkt. 10-4 at 30, 32-34.

On the date of her injury, Ms. Tubbs was using all six Devices to test pulverized limestone. *See* Dkt. 10-3 at 41, 61, 68. Ms. Tubbs added sulfuric acid to the Device. Dkt. 10-3 at 68. She then added another chemical, which she testified was sodium hydroxide. *Id.* at 39-42 (reaffirming this fact from Ms. Tubbs' sworn interrogatories); *id.* at 61, 68 (acknowledging that she added sodium hydroxide). After adding this second chemical, she left the room to give the sample time to "infuse." Dkt. 10-3 at 68-70.

Upon returning, Ms. Tubbs saw vapor in the room, which she traced to one of the six Devices. *Id.* at 72-73. She could not tell from what exact part of

the Device the vapor was being emitted but asserted that it came from somewhere in the vicinity of the "fractioning column ... in the area of the column baffle and the vent trap body ...." *Id.* at 82-85. Ms. Tubbs turned off the Device, and the vapor dissipated through the vent hood. *Id.* at 75, 77-78. She immediately felt sick, rushed to the bathroom, and began throwing up. *Id.* at 78-79. Ms. Tubbs was taken to see a doctor. Dkt. 10-4 at 40-41.

After the incident, a supervisor, Hillary Rodriguez, inspected the Device and found a kink in the tube connecting the back of the Device to the vacuum ventilation system.[2] Dkt. 10-4 at 28-30. But Ms. Rodriguez was not sure if the kink caused the incident. *Id.* at 54-55. A few days earlier, Ms. Rodriguez had replaced the tubing on the Device. *Id.* at 45-47. She had also trained Ms. Tubbs to examine the tubing before using the Device, to determine if it needed replacement. *Id.*

Ms. Tubbs filed suit in Texas state court, alleging that the Device was designed defectively, manufactured defectively, and failed to include appropriate warnings. *See* Dkt. 1-2. Hach timely removed the suit to this Court, Dkt. 1, and now moves for summary judgment on all claims. Dkt. 10.

---

[2] Although the record contains diagrams of the Device, none of them depict the hose at issue. *See, e.g.*, Dkt. 10-1 at HACH 0032, HAC 0125.

**Legal Standard**

A court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). When resolving a motion for summary judgment, the court must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

**Analysis**

Ms. Tubbs advances three theories of strict products liability—design defect, manufacturing defect, and marketing defect (sometimes called a warning defect). Dkt. 1-2 at 5. "[Texas] has adopted the theory of strict products liability expressed in section 402A of the Restatement (Second) of Torts." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381 (Tex. 1995) (citing *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967)). Under

the Restatement, "[a] product may be unreasonably dangerous because of a defect in manufacturing, design, or marketing." *Id.* For all three theories, the plaintiff must show a causative nexus between the alleged defect and her injury. *See Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007) (marketing defect, citing *Sims v. Washex Machinery Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ)); *Emerson Elec. Co. v. Johnson*, 627 S.W.3d 197, 203 (Tex. 2021) (design defect); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) (manufacturing defect).

## I. Ms. Tubbs fails to raise a fact issue on the element of causation for her strict products liabilities claims.

Hach principally contends that Ms. Tubbs cannot raise a fact question on causation, which is indispensable to all her products liability claims. *See* Dkt. 10 at 11-13. Invoking Ms. Tubbs's sworn deposition testimony, Hach argues that her injuries resulted from improperly combining sulfuric acid with sodium hydroxide—instead of hydrogen peroxide—in violation of written procedures. *Id.* In response, however, Ms. Tubbs proffered an affidavit asserting that she had mistakenly described the second chemical as sodium hydroxide when she, in fact, had followed proper procedures by using hydrogen peroxide. *See* Dkt. 12-1 at 1.[3] Under her theory, a kink in the vacuum tubing

[3] Because Hach would be entitled to summary judgment even if Ms. Tubbs's affidavit were considered, the Court does not reach the question of whether Ms. Tubb's

behind the Device caused gasses to leak, thereby causing her injury. Dkt. 12 at 3, 5; Dkt. 12-1 at 2.

### A. Ms. Tubbs's failure to proffer expert testimony supporting causation forecloses her claims.

Applying Texas law, the Fifth Circuit has recognized that "medical malpractice and product liability cases are quintessentially expert cases." *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 296 (5th Cir. 2019) (internal quotation marks omitted). To prove the causation element, a plaintiff must show that "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred." *Ledesma*, 242 S.W.3d at 46. Determining causation often requires highly specialized or technical information beyond a layperson's general experience and common understanding. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (holding expert testimony necessary to show that tractor's defective fuel system caused fuel to release and then ignite)*; Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (noting "we have consistently required competent expert testimony and objective proof" that defect in a vehicle caused sudden acceleration). Whether expert

---

inconsistent affidavit testimony should be disregarded as a sham affidavit. *See* Dkt. 13 at 1-4. Hach's request to strike Ms. Tubbs's affidavit is therefore denied as moot.

testimony is necessary presents a question of law. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004).

Here, Ms. Tubbs theorizes that a kink in the tubing behind the Device caused the emission of toxic gases that injured her respiratory system. Dkt. 12-1 at 2-3 (Tubbs affidavit). But the record shows that the Device itself is attached to another mechanical system—Westway's vacuum ventilation system. *See* Dkt. 10-4 at 29-34. The interplay between these systems, as described by Ms. Tubbs's supervisor, Hillary Rodriguez, is anything but simple. *See* Dkt. 10-4 at 33 ("The vacuum is what gives the scrubber pressure to pull out the vapor, and the blower attaches to the fume hood up top to provide more pressure to pull out; it almost provides a negative pressure. So anything that's in there will get pulled up"). Yet no qualified expert opined that the kink in the tubing—whose extent is unknown—was sufficient to offset the suction effect of Westview's ventilation system and cause gases to leak from the Device.

Moreover, the Device itself uses highly reactive chemicals—sulfuric acid, sodium hydroxide, hydrogen peroxide, and others—to break down various components. *See* Dkt. 10-1 at HACH 0049-108 (describing the operating procedures for each type of sample). And the manual itself notes that sulfuric acid could potentially cause a fire or an explosion if mixed with other chemicals. *See id.* at HACH 0042 ("Sulfuric acid ... may ignite or explode on contact with many different chemicals.").

"A lay juror's general experience and common knowledge do not extend to whether" a kinked tube in the Device—as opposed to some other cause—was sufficient, notwithstanding Westway's ventilation system, to cause backflow and leakage of gasses that are the byproduct of complex chemical reactions. *See Mack Trucks, Inc.*, 206 S.W.3d at 583 (analyzing manufacturing defect claim); *see also Armstrong*, 145 S.W.3d at 137 (collecting unintended automobile acceleration cases and noting that expert testimony was required to prove causation in each of those suits); *Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011, pet. denied) (finding "a consensus that expert testimony is required in the context of strict liability marketing defect claims"). Accordingly, the Court concludes that Ms. Tubbs had to furnish expert testimony supporting her claims that a defect in the Device caused her exposure.

The existence of other potential causes underscores the need for expert testimony. Ms. Rodriguez testified that she had replaced the very tube in question on August 6, just days before the incident. *See* Dkt. 10-4 at 80-81. Additionally, a dispute exists as to whether Ms. Tubbs used the correct chemicals when performing the procedures on that day. *Compare* Dkt. 10-3 at 41 (Ms. Tubbs's deposition testimony in which she claimed to have used sodium hydroxide), *and* Dkt. 10 at 4 (arguing that sodium hydroxide was "the wrong

chemical"), *with* Dkt. 12-1 at 1 (Ms. Tubbs's subsequent affidavit claiming that she used the correct chemical—hydrogen peroxide).

Notably, the (non-expert) witnesses offered by Ms. Tubbs could not substantiate that the kink itself caused the gases to leak.[4] In her deposition, Ms. Rodriguez speculated that there was a "kink in the tubing going ... to the vacuum part, and that *could have potentially* have released vapor." Dkt. 10-4 at 28 (emphasis added). But when pressed, Ms. Rodriguez admitted that she did not know what caused the accident. *Id.* at 55 ("Q. (BY MR. DARVILLE) ... And really what I want to make sure of is, is that do you have a concrete conclusion as to what happened in the digestion room that would cause whatever Ms. Tubbs says happened to happen? **A. No.**").

Lack of competent expert testimony leaves a jury to speculate, impermissibly, about what caused gas to leak from this highly technical Device. *See Campos v. Mack Trucks, Inc.*, 2009 WL 10699678, at *2 (W.D. Tex. Sept. 28, 2009) (granting summary judgment for defendant in defective-design case) (citing *Fenner v. General Motors Corp.*, 657 F.2d 647, 651 (5th Cir. Unit B 1981)). The deadline for designating experts has long since passed, Dkt. 8

---

[4] In her affidavit, Ms. Tubbs's states that the "lack of warnings that a kink in the hose provided by Hach could lead to excessive leak of fumes" caused her injuries. Dkt. 12-1 at 2-3. That conclusory assertion is inadequate to overcome summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (non-movant cannot raise a fact issue through conclusory allegations).

at 1 (June 29, 2022 deadline), yet the only experts designated by Ms. Tubbs address her medical condition, Dkt. 11. With no expert to opine on the critical question of whether the Device was defective, Ms. Tubbs cannot meet her burden to raise a fact issue on her strict products liability claims. *See, e.g.*, *Sigurdson v. Ford Motor Co.*, 2006 WL 417502, at *2 (S.D. Tex. Feb. 21, 2006) (granting summary judgment where plaintiff failed to connect failed deployment of airbags to the cause of her injuries and had furnished no expert testimony regarding the issue). This omission alone warrants granting summary judgment for Hach on all of Ms. Tubbs's claims.

**B. Ms. Tubbs's design defect and manufacturing defect claims fail for additional reasons.**

Ms. Tubbs's manufacturing defect and design defect claims suffer from additional flaws that merit summary judgment. In particular, Ms. Tubbs presents no evidence that the Device was defectively designed or contained a manufacturing defect.

A design defect claim requires proof that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Emerson Elec. Co. v. Johnson*, 627 S.W.3d 197, 203 (Tex. 2021); *see also* Tex. Civ. Prac. & Rem. Code § 82.005. Given the technical nature of this inquiry, courts normally require expert testimony

demonstrating the existence of a design defect or a safer alternative design. *In re Zimmer*, 451 S.W.3d 893, 906 (Tex. App.—Dallas 2014, no pet.) (citing *Armstrong*, 145 S.W.3d at 137).

Ms. Tubbs's lack of expert testimony proving that the Device was defectively designed is fatal to her claim. She does not even explain what she thinks the design defect is. Without identifying a specific flaw in the Device's design—much less through expert testimony—Ms. Tubbs cannot meet her burden of proof. *See Armstrong*, 145 S.W.3d at 137; *Sigurdson*, 2006 WL 417502, at *3 ("In light of the complete absence of expert testimony or any other evidence as to the [the alleged defect], Defendant is entitled to summary judgment.").

As an additional flaw, Ms. Tubbs fails to substantiate a safer alternative to the Device's design. She did not designate any expert on this issue. *See* Dkt. 11. Rather, her response simply states, "Plaintiff believes that once Hach employees are deposed, there will be evidence of a safer alternative designs for this apparatus system." But discovery closed on August 31, 2022, *see* Dkt. 8 at 1, and Ms. Tubbs has not supplemented the summary judgment record. Her design defect claim thus fails. *See Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 336 (5th Cir. 2014) (affirming summary judgment where plaintiff failed to show that a safer alternative existed for seatbelt design).

Other deficiencies foreclose Ms. Tubbs's manufacturing-defect claim. A manufacturing defect exists "when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 542 (Tex. 2011) (quoting *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006)). But here, Ms. Tubbs offers nothing more than a conclusory sentence denying Hach's contention that she lacks evidence supporting this claim. *See* Dkt. 12 at 4. She submits no evidence that the Device deviated from its intended specifications, whether in its tubing or any other respect, when it left Hach's possession. *See Dewayne Rogers Logging, Inc. v. Propac Indus.*, 299 S.W.3d 374, 383 (Tex. App.—Tyler 2009, pet. denied) (affirming summary judgment for manufacturer, where similar evidence was lacking, citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

In short, Ms. Tubbs fails to raise a genuine dispute of material fact concerning her design defect and manufacturing defect claims. Summary judgment is warranted on those claims.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant Hach Company's motion for summary judgment (Dkt. 10), **DENY** Defendant's request to strike the affidavit of Plaintiff Kirsten Tubbs (Dkt. 13 at 1) as **MOOT**, and enter a take nothing judgment on all of Plaintiff's claims.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on November 7, 2022 at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge